1   Matthew L. Lalli (#137927)
    mlalli@swlaw.com
2   SNELL & WILMER L.L.P.
    15 West South Temple, Suite 1200
3   Salt Lake City, UT 84101
    Telephone:  801-257-1900
4   Facsimile:  801-257-1800

5   Alina Mooradian (#245470)
    amooradian@swlaw.com
6   Jonathan R. Murphy (#265634)
    jrmurphy@swlaw.com
7   SNELL & WILMER L.L.P.
    600 Anton Boulevard, Suite 1400
8   Costa Mesa, CA 92626-7689
    Telephone:  714-427-7000
9   Facsimile:  714-427-7799

10  *Attorneys for Defendant*
    *Provident Trust Group, LLC*

11

12              **UNITED STATES DISTRICT COURT**

13   **NORTHERN DISTRICT OF CALIFORNIA -- SAN JOSE DIVISION**

14  ANTONIA LONERGAN, individually and on        Case No. C 13-02081-PSG
    behalf of a class of similarly situated persons,
15                                                Date:    August 27, 2013
                                                  Time:    10:00 a.m.
16            Plaintiff,                          Judge:  Paul S. Grewal

17  vs.                                           **DEFENDANT PROVIDENT TRUST
                                                  GROUP, LLC'S NOTICE OF MOTION,**
18  PROVIDENT TRUST GROUP, LLC, MY               **AND MOTION TO DISMISS;**
    SELF DIRECT, LLC, BAY AREA                    **MEMORANDUM OF POINTS AND**
19  EQUITY GROUP, LLC, VANGUARD                  **AUTHORITIES; DECLARATION OF**
    TITLE INSURANCE AGENCY, LLC,                  **JASON HELQUIST; DECLARATION OF**
20  ANTRANIK KABAJOUZIAN a/k/a ANTO             **ALINA MOORADIAN; [PROPOSED]**
    KABAJOUZIAN, and DOES 1-3,                    **ORDER**
21
              Defendants.                         DATE OF FILING: May 7, 2013
22                                                TRIAL DATE:     None

23

24  ///

25  ///

26  ///

27  ///

28  ///

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

                                1                   Case No. C 13-02081-PSG

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        PLEASE TAKE NOTICE that on August 27, 2013 at 10:00 a.m., or as soon thereafter as

3    the matter may be heard in Courtroom 5 of the above-entitled Court located at 280 South First

4    Street #2112, San Jose, California (95113), Defendant Provident Trust Group, LLC ("Provident")

5    moves the Court to dismiss the putative Class Action Complaint ("Complaint"), pursuant to Fed.

6    R. Civ. P. 12(b)(3) and Fed. R. Civ. P. 12(b)(6), filed against it by Plaintiff Antonia Lonergan,

7    individually and on behalf of a purported class of similarly situated persons ("Plaintiff"), because

8    this Court is an improper venue for this dispute and because the Complaint fails to state a claim

9    upon which relief can be granted.

10       This motion is supported by the following memorandum of points and authorities and the

11   Declaration of Jason Helquist filed contemporaneously herewith.

12       DATED this 8th day of July, 2013.

13                                  **SNELL & WILMER L.L.P.**

14

15                                  //s// Alina Mooradian
                                    ————————————————
16                                  Matthew L. Lalli
                                    Jonathan R. Murphy
17                                  Alina Mooradian
                                    *Attorneys for Defendant*
18                                  *Provident Trust Group, LLC*

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

                                    2                          Case No. C 13-02081-PSG

17515942

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# TABLE OF CONTENTS

**Page**

I.   SUMMARY ............................................................................................ 3

II.  RELEVANT FACTUAL BACKGROUND ................................................ 4

    A.   Plaintiff and Her Investment with Bay Area Equity Group ................... 4

    B.   Provident and Its Dealings with Plaintiff ................................................ 6

    C.   The Forum Selection Clause ................................................................... 7

III. ARGUMENT ........................................................................................... 8

    A.   This is an Improper Venue for this Dispute and the Forum Selection

        Provision in Provident's Agreement with Plaintiff Mandates Dismissal of

        Provident from this Action Pursuant to Fed ........................................... 9

        1.   The 12(b)(3) Standard ................................................................. 9

        2.   The Forum Selection Provision in Provident's Agreement is

            Mandatory ............................................................................... 10

        3.   The Forum Selection Provisions are Valid, Fair, and Reasonable ........... 11

    B.   Plaintiff's Complaint Does Not Meet the Pleading Standards of Rules 8

        and 9(b), and Should Be Dismissed under Rule 12(b)(6) ..................... 12

        1.   Plaintiff Fails to Allege a False Misrepresentation ................................. 13

        2.   Plaintiff Fails to Allege Knowledge ......................................... 14

        3.   Plaintiff Fails to Allege Justifiable Reliance ............................. 15

        4.   Plaintiff Fails to Allege Damages ............................................. 17

        5.   Plaintiff Improperly Grouped Defendants ................................. 18

        6.   Plaintiff Fails to Plead Required Elements of Individual Claims ............. 19

IV.  CONCLUSION ....................................................................................... 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Snell & Wilmer*
—— L.L.P. ——
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Anderberg v. Masonite Corp.*
(N.D. Ga. 1997) 176 F.R.D. 682 ........................................................................................ 13

*Argueta v. Banco Mexicano, S.A.*
(9th Cir. 1996) 87 F.3d 320 ................................................................................ 9, 10, 11

*Ashcroft v. Iqbal*
(2009) 556 U.S. 662, 129 S.Ct. 1937 .............................................................................. 13

*Bell Atlantic Corp. v. Twombly*
(2007) 550 U.S. 544, 127 S.Ct 1955 ............................................................................... 13

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*
(9th Cir 2011) 637 F.3d 1047 .......................................................................................... 12

*Carnival Cruise Lines, Inc. v. Shute*
(1991) 499 U.S. 585 ........................................................................................................... 9

*Docksider, Ltd. v. Sea Tech., Ltd.*
(9th Cir. 1989) 875 F.2d 762 ........................................................................................... 10

*H.J. Inc. v. Nw. Bell Telephone Co.*
(1989) 492 U.S. 229 ......................................................................................................... 20

*Hegwer v. Am. Hearing & Assocs.*
(N.D. Cal. Feb 27, 2012) No. C 11-04942 SBA, 2012 WL 629145 ............................... 11

*In re Emery*
(9th Cir. 2003) 317 F.3d 1064 ......................................................................................... 19

*Kearns v. Ford Motor Co.*
(9th Cir. 2009) 567 F.3d 1120 ......................................................................................... 14

*Levine v. Entrust Group, Inc. et al.*
(N.D. Cal. June 11, 2013) No. C 12-03959-WHA, 2013 WL 2606407 ................. 9, 15, 18, 19

*Levine v. Entrust Group, Inc., et al.*
(N.D. Cal. Apr. 1, 2013) No. C 12-03959-WHA, 2013 WL 1320498.. 8, 14, 15, 17, 18, 19, 20

*Levine v. The Entrust Group, Inc., et al.*
(N.D. Cal. Dec. 6, 2012) No. C 12-013959-WHA, 2012 WL 6087399 ............. 3, 8, 10, 15, 19

*M/S Bremen v. Zapata Off-Shore Co.*
(1972) 407 U.S. 1 ............................................................................................................. 11

*Manetti-Farrow, Inc. v. Gucci America, Inc.*
(9th Cir. 1988) 858 F.2d 509 ........................................................................................... 10

ii

Case No. C 13-02081-PSG

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3    *Mazzola v. Roomster Corp.*
        (C.D. Cal. Nov. 30, 2010) No. CV 10-5954-AHM, 2010 WL 4916610 ........................ 11, 12

4

5    *N. Cal. Dist. Council of Laborers v. Pittsburg-Des-Moines Steel Co.*
        (9th Cir. 1995) 69 F.3d 1034........................................................................................ 10

6    *Navarro v. Block*
        (9th Cir. 2001) 250 F.3d 729......................................................................................... 13

7

8    *Ness v. Ciba-Geigy Corp. USA*
        (9th Cir. 2003) 317 F.3d 1097..................................................................................... 12, 13

9    *Prof'l Courier & Logistics, Inc. v. NICA, Inc.*
        (E.D. Cal. April 3, 2012) No. 2:12-cv-00054-JAM/EFB, 2012 WL 112067 .......................... 9

10

11   *Sams v. Entrust Arizona, LLC*
        (N.D. Md. May 2, 2013) No. C 13-03322 .................................................................... 9

12   *Swartz v. KPMG LLP*
        (9th Cir. 2007) 476 F.3d 756........................................................................................ 18

13

14

**STATE CASES**

15   *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil, & Shapiro, LLP*
        (2007) 150 Cal.App. 4th 384, 58 Cal. Rptr. 3d 516.................................................... 20

16

17

**FEDERAL STATUTES**

18   18 U.S.C. § 1961(5) ................................................................................................... 20

19   26 C.F.R. 1.408-2....................................................................................................... 17

20

**FEDERAL RULES**

21   Fed. R. Civ. P. 12(b)(3)......................................................................................... 3, 9, 20

22   Fed. R. Civ. P. 12(b)(6)............................................................................................. 20

23   Fed. R. Civ. P. 9(b) .............................................................................................. 3, 8, 12

24

**OTHER AUTHORITIES**

25   SECURITIES AND EXCHANGE COMMISSION INVESTOR ALERT: SELF-DIRECTED IRAS
        AND THE RISK OF FRAUD (2011)................................................................................. 16

26

27

28

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

iii

Case No. C 13-02081-PSG

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY

Plaintiff Antonia Lonergan is alleged to have taken approximately $288,000 out of her secure pension fund to invest in a series of residential rental properties in Detroit she had never seen.  When her investment did not provide as high a return as she had hoped, and apparently feeling duped, she filed this lawsuit alleging that she was defrauded, among others, by Provident.  By her own acknowledgements, Provident did not sell her the property, did not make any representations to her about the property or the quality of investment, and did not receive any money from her other than the nominal fees for providing the purely administrative tasks Provident provides for its customers who prefer to invest their pension monies in investments they direct themselves rather than those directed by their employers' funds.

This is not the first time the custodian of self-directed IRA investments has been sued by investors in situations such as this.  Indeed, as recently pointed out by this Court, Judge Alsup presiding, in a very similar fraud suit against a self-directed IRA custodian like Provident, complaints such as the one filed by Plaintiff are "blunderbuss, cookie-cutter pleading[s], evidently used as a template by the same counsel in several other recent actions." *Levine v. The Entrust Group, Inc., et al.*, No. C 12-013959-WHA, 2012 WL 6087399, *1, fn* (N.D. Cal. Dec. 6, 2012).  Such complaints are non-starters because self-directed IRA custodians like Provident are merely passive administrators that do not sell investments, do not provide investment advice, and have no control over the quality or performance of investments the investor self-directs.  Like *Entrust* and others, therefore, this complaint should be dismissed for at least two reasons.

First, Plaintiff has agreed with Provident that she would litigate any and all disputes between the parties solely in the county courts of Clark County, Nevada.  This forum-selection agreement is enforceable, reasonable, and requires the Court to dismiss Provident from the Complaint under Fed. R. Civ. P. 12(b)(3).

Second, all of Plaintiff's claims for relief sound in fraud in that Plaintiff accuses Provident of aiding and abetting the fraudsters.  Thus Fed. R. Civ. P. 9(b) requires Plaintiff to plead with specificity plausible facts showing that *Provident* engaged in fraud against Plaintiff.  Plaintiff's

17515942

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

allegations do not meet these standards. Plaintiff has not alleged any facts to show that Provident itself acted fraudulently, nor has Plaintiff alleged sufficient facts to show that Provident acted as part of a conspiracy with the alleged fraudsters, knew (or knows) of the alleged fraud, or in any other way aided and abetted the alleged fraud. As Plaintiff's counsel has tried—unsuccessfully— to do many times before, this Plaintiff attempts to hide these dispositive failures by improperly grouping defendants together as if they were one entity. But such group pleading fails under Rule 9(b), and this Court should dismiss Plaintiff's Complaint for failure to plead its fraud claims against Provident with specificity. Plaintiff's conclusory allegations against Provident on the necessary elements of Plaintiff's claims are devoid of factual support and implausible, at best.

Provident respectfully requests that the Court dismiss the Complaint against Provident, with prejudice, under Rules 12(b)(3) and 12(b)(6).

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Plaintiff and Her Investment with Bay Area Equity Group

Plaintiff alleges that, in March 2012, her traditional IRA investment with Vanguard was not performing well and she was actively looking for real estate investment opportunities that would provide her greater returns. *See* Compl. ¶¶ 97-98. Plaintiff asserts that she found an advertisement for BAE on the website Craigslist.org, and that she sought out investment opportunities with BAE by filling out BAE's online order form and personally visiting BAE's offices. *See* Compl. ¶¶ 99-102. After her discussions with BAE, and after she reviewed the "information package" provided to her by BAE, Plaintiff communicated to BAE her desire to invest, through a self-directed IRA, in residential properties in Detroit, Michigan. *See* Compl. ¶¶ 102-108.

To set up her self-directed IRA account and to employ Provident's services as the custodian of that account, BAE provided Plaintiff with Provident's standard Individual Retirement Account Application, on which BAE included its own cover page identifying the purpose of the Provident application and the instructions for completing and submitting it. *See* Compl. ¶¶ 108-110. Plaintiff signed the Provident application and agreed to its terms and conditions, including the conditions expressly incorporated into the application through related

DEFENDANT PROVIDENT TRUST GROUP, LLC'S MOTION TO DISMISS

1  documents provided by Provident.  Provident subsequently approved the application to become

2  the passive custodian of Plaintiff's self-directed IRA.  *See* Compl. ¶108; *see also* Lonergan

3  Individual Retirement Account Application, Apr. 26, 2012 (hereafter "Provident Application") (J.

4  Helquist Declaration, **Exhibit A**).[1]

5      Before investing in her self-directed IRA, Plaintiff was required to deposit funds into her

6  account and then direct Provident, the passive custodian, where to send those funds (i.e., in what

7  investments Plaintiff wished to invest her funds).  Thus, in May 2012, Plaintiff caused her

8  Vanguard IRA funds to be wired to her Provident self-direct IRA account, *see* Compl. ¶ 121, and

9  Plaintiff submitted four "Direction of Investment" forms to Provident directing Provident to

10  transfer those funds to Vanguard to fund her desired investment with BAE to purchase four

11  residential properties in Detroit, *see* Compl. ¶¶114-120.[2]  Provident immediately performed

12  Plaintiff's directive.

13      According to Plaintiff, she became concerned in September 2012 "because she had not

14  received property tax bills for the four properties."  *See* Compl. ¶ 129.  Despite these concerns,

15  Plaintiff then submitted three additional "Direction of Investment" forms to Provident directing

16  Provident to transfer additional funds to Vanguard to fund her desired investment with BAE to

17  purchase three additional residential properties in Detroit.  *See* Compl. ¶¶ 127-128.

18      Plaintiff alleges that four months later, in February 2013, she "decided to check the status

19  of" her self-directed IRA and noticed that "BAE had not been depositing rent payments for her

20  four Detroit properties."  *See* Compl. ¶ 130.  After contacting BAE, "rent payments began to

21  [1] The Court may consider Plaintiff's Provident Application and Plaintiff's Agreements with Provident—
Exhibits A and B, respectively—without converting this motion into one for summary judgment under
22  Rule 56.  First, a 12(b)(3) motion permits the court to consider evidence beyond the pleadings.  *See, e.g.,*
*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  Second, even on a 12(b)(6) motion,
23  the Court may consider material—even if not physically attached to the complaint—that is not questioned
as inauthentic and that is necessarily relied upon by the plaintiff's complaint.  *See, e.g., Lee v. City of Los*
24  *Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by* 307 F.3d 1119, 1125-26 (9th
Cir. 2002).  Plaintiff cannot question the authenticity of Exhibits A and B, and she expressly relied on both
25  in her Complaint.  *See, e.g.,* Compl. ¶¶ 108-114, 133.
26  [2] Plaintiff alleges that the funds she initially deposited into her self-directed IRA came from Vanguard, and
that Plaintiff then directed Provident to send those funds back to Vanguard to purchase the Detroit
27  properties.  Although Plaintiff identifies only one Vanguard entity, including by naming only one
Vanguard entity as a defendant in this action, it appears that Plaintiff's allegations concern two separate
28  Vanguard entities—the one that originally held Plaintiff's traditional IRA and the other that was involved
with titling Plaintiff's Detroit properties.

17515942

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    trickle into" Plaintiff's account, but she became "increasingly suspicious" and "thought that

2    perhaps BAE [was] stealing the rent payments on her properties." *See* Compl. ¶¶ 131-132.  Then,

3    in March 2013, Plaintiff hired a property manager through whom Plaintiff allegedly learned that

4    Vanguard had failed to record the deeds titling Plaintiff's Detroit properties, and that the Detroit

5    properties were in a state of disrepair.  *See* Compl. ¶¶ 138-140, 142.

6          Plaintiff claims that she "does not know what happened to her [self-directed IRA assets]

7    or the real estate [she] purchased from BAE"—even though all of the facts alleged demonstrate

8    that she made her investment of choice, Vanguard allegedly failed to record the titling deed (with

9    no harm to Plaintiff), and Plaintiff's investments with BAE are performing, though at a slower

10   rate than Plaintiff hoped.  *See* Compl. ¶ 151.  Nevertheless, Plaintiff has decided to allege a grand

11   conspiracy concerning the "fraudulent activities of BAE, VANGUARD and KABAJOUZIAN,"

12   and including Provident as the first-named defendant and obvious litigation target.  *See* Compl.

13   ¶ 152.

14         **B.**    **Provident and Its Dealings with Plaintiff**

15         Provident is simply a passive custodian of self-directed IRAs.  To become certified and to

16   maintain its certification as a custodian, Provident is required to remain passive, is "*prohibited*

17   from offering investment advice," and "may act solely as conduits through which [self-direct

18   IRA] accounts are administered." *See, e.g.*, Compl. ¶ 30.a (citing 26 C.F.R. 1.408-2(e)(6)).  As a

19   custodian, Provident "has no discretion to direct the investment of the trust funds or any other

20   aspect of the business administration of the trust, but is merely authorized to acquire and hold

21   particular investments specified by the trust instrument." *See* Compl. ¶ 30.a.  Not only did

22   Plaintiff allege this, but Provident made every attempt to inform Plaintiff of Provident's limited

23   duties, including in all seven of the "Direction of Investment" forms that Plaintiff submitted to

24   Provident, which contained the same authorization and agreement:

25             My IRA account is self-directed and I, alone, am responsible for the
          selection, due diligence, management, review and retention of all

26             investments in my account.  I agree that the Custodian and Administrator
          are not a 'fiduciary' for my account, as the term is defined in the

27             Internal Revenue Code, ERISA or any other applicable federal, state or local laws.
          I hereby direct the Custodian and Administrator, in a passive capacity, to

28

DEFENDANT PROVIDENT TRUST GROUP, LLC'S MOTION TO DISMISS

17515942

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

enact this transaction for my account, in accordance with my adoption agreement.

*See, e.g.*, Direction of Investment, Apr. 26, 2012 (hereafter "DOI") (contained in Exhibit A).

Plaintiff's allegations concerning Provident's purported role in the alleged fraud fall into three main categories. First, Plaintiff tries to tie Provident to the alleged fraudsters, and Plaintiff's decision to invest with the alleged fraudsters, by claiming that Provident's mere existence as the passive custodian "gave credibility" and "a sense of legitimacy" to the alleged fraudsters' purported scheme, and permitted Plaintiff to believe she was "protected by large, purportedly well-funded companies with trustworthy names like "PROVIDENT TRUST" (hereafter, the "Credibility Theory"). *See, e.g.*, Compl. ¶¶ 56, 72-73, 87.

Second, Plaintiff asserts that Provident allegedly failed to perform certain purported custodial duties while acting as the passive custodian of Plaintiff's account, including an alleged failure to "maintain custody of the paperwork providing ownership of a designated asset by the [self-directed IRA]," and "to accurately reflect the fair market value of [Plaintiff's self-directed IRA assets]" (hereafter, the "Custodial Duty Theory"). *See, e.g.*, Compl. ¶¶ 40-41, 152.

Third, Plaintiff alleges that, "[d]espite its knowledge of the fraudulent activities of BAE, VANGUARD and KABAJOUZIAN," Provident did not tell Plaintiff about the fraud (the "Arbiter of Fraud Theory"). *See, e.g.*, Compl. ¶ 152. With regard to the Arbiter of Fraud Theory, Plaintiff alleges that her first direct communication with Provident, and the first indication Provident ever received that something *may* be amiss with BAE and/or Plaintiff's investments, was in "early April of 2013"—six months after Plaintiff had directed Provident to transfer the funds for Plaintiff's final investment with BAE. *See* Compl. ¶¶ 146-149.

C.      **The Forum Selection Clause**

As part of Plaintiff's Application with Provident, Plaintiff acknowledged receipt of and agreed to the terms and conditions contained in and attached to the parties' agreements. *See, e.g.*, Exhibit A at § 6 ("I have received a copy of the Application, the IRA Custodial Account Agreement, Disclosure Statement, and the Financial Disclosure. I understand that the terms and conditions which apply to this IRA are contained in this Application and the Plan Agreement. I

17515942

1  agree to be bound by those terms and conditions.").  In addition to receiving and agreeing to the

2  "Custodial Agreement" when she applied for Provident's services, Plaintiff also received the

3  "Custodial Agreement" with her Annual Provident Trust Self-Directed IRA Statement, which

4  Plaintiff acknowledges receiving and reviewing in "early March of 2013."  *See, e.g.*, Compl.

5  ¶ 133; *see also* Traditional IRA Custodial Agreement (J. Helquist Declaration, **Exhibit B**).  That

6  Custodial Agreement contains a clear and unambiguous forum selection clause mandating that

7  any suits against Provident must be litigated solely in the state courts of Clark County, Nevada:

8
9  > Any suit filed against Custodian arising out of or in connection with this
>  Agreement shall only be instituted in the county courts of Clark County,
>  Nevada where Custodian maintains its principal office and you agree to
>  submit to such jurisdiction both in connection with any such suit you may
10  > file and in connection with any suit which we may file against you.

11  *See* Exhibit E § 8.14.  Every version of every custodial agreement that Provident has ever entered

12  with any investor—including Plaintiff and all members of the putative class—has always

13  contained a Nevada forum-selection provision.  *See* Decl. of J. Helquist ¶ 5.

14  **III.   ARGUMENT**

15       The reasons why the complaint against Provident should be dismissed perhaps are best

16  evident in *Levine v. The Entrust Group, Inc., et al.*, where current plaintiff's counsel pleaded

17  nearly identical claims as they have pleaded here, on behalf of a putative class of self-directed

18  IRA investors and against certain custodians of those self-directed IRAs—including four

19  corporate defendants belonging to the Entrust corporate group ("Entrust"), as well as Equity Trust

20  Company ("Equity").  *See Levine v. The Entrust Group, Inc., et al.*, No. C 12-013959-WHA,

21  2012 WL 6087399, *1 (N.D. Cal. Dec. 6, 2012) (hereafter "*Entrust I*") (attached hereto as

22  **Exhibit C**).  On the defendants' motions to dismiss the initial complaint, Judge Alsup easily

23  dispatched with the plaintiffs' complaint.  First, Judge Alsup dismissed Equity from the case

24  entirely based solely on Rule 12(b)(3) and the Ohio forum-selection clause contained in Equity's

25  agreements.  *Id.* at *2-4.  Next, Judge Alsup dismissed the complaint against the Entrust

26  defendants because the claims for relief "sound[ed] in fraud" but failed to meet the Rule 9(b)

27  specificity pleading standard.  *Id.* at *1-2; *see also Levine v. Entrust Group, Inc., et al.*, No. C 12-

28  03959-WHA, 2013 WL 1320498, *3-6 (N.D. Cal. Apr. 1, 2013) (hereafter "*Entrust II*") (attached

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

8

1   hereto as **Exhibit D**); *Levine v. Entrust Group, Inc. et al.*, No. C 12-03959-WHA, 2013 WL

2   2606407, *2-6 (N.D. Cal. June 11, 2013) (hereafter "*Entrust III*") (attached hereto as **Exhibit E**).

3         In analyzing whether plaintiffs and their counsel had acted in bad faith, Judge Alsop

4   added a warning for future district court judges faced with these complaints by plaintiff's counsel:

5   > [T]he complaint in this action is but one of several cookie-cutter
6   > complaints filed by plaintiffs. The most recent example is a complaint
   > filed in the Northern District of Maryland. *Sams v. Entrust Arizona, LLC*,
7   > No. C 13-03322 (N.D. Md. May 2, 2013) (Judge Ellen Hollander). The
   > complaint in *Sams* is virtually identical to the complaint in the present
8   > action. The plaintiff and the fraudster are changed, but very little else.
   > *This order is concerned that plaintiffs are filing parallel complaints*
9   > *against defendants until they can find a judge who permits their allegations*
   > *to survive a motion to dismiss.*

10  *Entrust III*, 2013 WL 2606407 at *2 fn* (emphasis supplied).

11        For the same reasons, this complaint should be dismissed as well.

12  **A.**     **This is an Improper Venue for this Dispute and the Forum Selection
        Provision in Provident's Agreement with Plaintiff Mandates Dismissal of**
13          **Provident from this Action Pursuant to Fed. R. Civ. P. 12(b)(3).**

14        It is well-settled that parties to a contract may designate a forum in which any litigation

15  between them is to take place. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

16  Litigation commenced elsewhere should be dismissed for improper venue. *Id.* Here, Plaintiff

17  agreed with Provident that the "county courts of Clark County, Nevada" would be the sole venue

18  for any and all disputes between Plaintiff and Provident.

19              1.    The 12(b)(3) Standard

20        In the Ninth Circuit, a defendant may seek to enforce a forum selection clause by filing a

21  motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). *Argueta v. Banco*

22  *Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). When venue in a particular judicial district is

23  improper, the court must dismiss or transfer the action. *Id.* However, because federal courts lack

24  authority to transfer cases to state courts, the only method through which a forum selection clause

25  designating a state court may be enforced is a motion to dismiss for improper venue. *Prof'l*

26  *Courier & Logistics, Inc. v. NICA, Inc.*, No. 2:12-cv-00054-JAM/EFB, 2012 WL 112067, *4

27  (E.D. Cal. April 3, 2012). To determine whether to grant a Rule 12(b)(3) motion to dismiss, the

28  court need not accept the pleadings as true and may consider facts outside the pleadings.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

Case No. C 13-02081-PSG

DEFENDANT PROVIDENT TRUST GROUP, LLC'S MOTION TO DISMISS

17515942

1  *Argueta*, 87 F.3d at 324.  Even where, as here, federal court jurisdiction is based on diversity, the

2  Ninth Circuit applies federal law to interpret a forum selection clause.  *Manetti-Farrow, Inc. v.*

3  *Gucci America, Inc.*, 858 F.2d 509, 512 (9th Cir. 1988).

4        2.     The Forum Selection Provision in Provident's Agreement is Mandatory.

5        Courts characterize forum selection clauses as either "mandatory" or "permissive" to

6  determine whether the suit can be maintained only in the designated forum.  *N. Cal. Dist. Council*

7  *of Laborers v. Pittsburg-Des-Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995).  A permissive

8  clause permits jurisdiction to be exercised in a designated forum but does not prohibit litigation

9  elsewhere, whereas a mandatory clause dictates and exclusive forum for litigation under the

10  contract.  *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989).  A forum

11  selection clause will be enforced where venue is specified through mandatory language.

12        In *Docksider*, for example, the contract at issue provided that the parties agreed to the

13  exclusive jurisdiction of state courts in Virginia.  *Id*.  The Ninth Circuit concluded that the forum

14  selection clause was mandatory and enforceable because the language specified the venue and

15  indicated that the jurisdiction was exclusive.  *Id.* at 764.

16        Similarly, in *Entrust I*, Judge Alsup dismissed defendant Equity (the neutral custodian of

17  self-directed IRA funds) from the action under Rule 12(b)(3), and thereby enforced a forum-

18  selection provision that was identical in every word to Provident's forum-selection provision,

19  with the exception of selecting Loraine County, Ohio as the forum instead of, as here, Clark

20  County, Nevada.  *See* 2012 WL 6087399 at *3-4.

21        Here, the forum selection clause at issue mandates:

22          *Any* suit filed against [Provident] arising out of or in connection with this
           Agreement shall *only* be instituted in the county courts of Clark County,

23          Nevada where [Provident] maintains its principal office and you agree to
           submit to such jurisdiction both in connection with any such suit you may

24          file and in connection with any suit which we may file against you.

25  *See* Exhibit B, § 8.14 (emphasis supplied).  By including the word "only" in their forum selection

26  agreement, Provident and Plaintiff clearly agreed that the county courts for Clark County, Nevada

27  would be the mandatory and exclusive venue of "any" lawsuit, including the present suit.

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

DEFENDANT PROVIDENT TRUST GROUP, LLC'S MOTION TO DISMISS

17515942

3.      The Forum Selection Provisions are Valid, Fair, and Reasonable.

The Supreme Court has held that forum selection clauses are "prima facie valid." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972).  A party seeking to avoid a forum selection clause bears a "heavy burden" to show that the clause is unenforceable.  *Id.*  And, because forum selection clauses are presumptively valid, they should be upheld absent some "compelling and countervailing reason." *Id.* at 12.  Enforcement—through dismissal in this case—must be ordered absent a showing that the clause is "unreasonable"[3] for one of three reasons:  (1) inclusion of the clause was a product of fraud, undue influence, or overreaching; (2) enforcement would be so fundamentally unfair and seriously inconvenient to one party that it would effectively deprive the party of its day in court; or (3) enforcement would contravene public policy.  *Id.* at 15.  Here, Plaintiff has not attempted to—and cannot—show that the forum selection clause is unreasonable, and the Court should reject any attempt by Plaintiff to do so in response to this motion.

For example, Plaintiff cannot succeed in arguing that Provident is a conspirator in a fraudulent scheme relating to forum selection or that the forum selection clause is itself the product of fraud.  In *Mazzola v. Roomster Corp.*, No. CV 10-5954-AHM, 2010 WL 4916610, *1 (C.D. Cal. Nov. 30, 2010), the plaintiff argued that inclusion of a forum selection clause was the product of fraud or overreaching because "(1) the Defendants' entire operation [was] a fraud and hence, the forum selection clause [was] nothing more than the fruit of it, and (2) Plaintiff was never adequately notified of the forum selection clause." *Id.* at *2.  The court rejected even these extreme allegations, holding that plaintiff's claims regarding the defendants' alleged fraudulent scheme had no effect on how the forum selection clause itself was included in the agreement and plaintiff had alleged no facts showing that the forum selection clause itself was the product of fraud.  *Id.*  Although the plaintiff contended that the alleged fraudulent scheme "somehow

_____

[3] The "unreasonableness" exceptions are narrowly construed by courts in the Ninth Circuit and elsewhere. *Argueta*, 87 F.3d at 325-27.  Whether other provisions of an agreement are unreasonable is not relevant to "whether the plaintiff has carried his heavy burden of establishing that the forum selection clause is unreasonable." *Hegwer v. Am. Hearing & Assocs.*, No. C 11-04942 SBA, 2012 WL 629145, *3 (N.D. Cal. Feb 27, 2012).

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

11                                 Case No. C 13-02081-PSG

1   taint[ed] everything else related to [defendant's] business," the court was not persuaded and

2   enforced the forum selection clause. *Id.* The same result should inure here.

3          Nor can Plaintiff argue that it would be "fundamentally unfair" to litigate this dispute in

4   Nevada such that Plaintiff would be "effectively deprived of [her] day in court" if the forum

5   selection clause were enforced.  Plaintiff is a California resident. *See* Complaint ¶ 4.  Plaintiff

6   agreed to litigate this dispute in the neighboring state, Nevada.  Provident is located in Nevada.

7   Most, if not all, of the documents, materials, and witnesses relating to Plaintiff's dealings with

8   Provident are located in Nevada.  Litigating in Nevada—the forum Plaintiff agreed to—would not

9   require significant travel and would not be more "gravely difficult" for Plaintiff, particularly

10  given that Plaintiff is represented by sophisticated class counsel.

11         Moreover, no California public policy is implicated, let alone contravened, by

12  enforcement of the Nevada forum selection clause.  Nevada courts and juries are as competent

13  and fair as California courts and juries, and Plaintiff can pursue all of her claims in Nevada to the

14  same extent she would we be able to do so in California.

15         In short, the Court should enforce the parties' agreement and dismiss Provident entirely

16  from this action under Rule 12(b)(3).

17         **B.      Plaintiff's Complaint Does Not Meet the Pleading Standards of Rules 8 and 9(b), and Should Be Dismissed under Rule 12(b)(6).**

18

19         Plaintiff's Complaint fails to meet Rule 9(b)'s heightened pleading requirements for

20  claims of fraud.  Rule 9(b) requires:  "In alleging fraud or mistake, a party must state with

21  particularity, the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  That is, Rule

22  9(b) requires "the circumstances constituting the alleged fraud be specific enough to give

23  defendants notice of the particular misconduct . . . so that they can defend against the charge."

24  *Ness v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted).  This

25  means that Plaintiff must plead "the who, what, when, where, and how" of the alleged fraudulent

26  misconduct. *Id.*  "Claims of fraud . . . must, in addition to pleading with particularity, also plead

27  plausible allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055

28  (9th Cir 2011).  On a Rule 12 motion, as here, dismissal is proper "where there is no cognizable

Snell & Wilmer

L.L.P.

LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

DEFENDANT PROVIDENT TRUST GROUP, LLC'S MOTION TO DISMISS

17515942

theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Facts that are merely consistent with a defendant's liability" is not sufficient to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 (2009). The Complaint must plead *facts*, not just "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct 1955, 1964-65 (2007).

Here, all of Plaintiff's claims against Provident sound in fraud and rely on the intentional fraud claim, namely that Provident—the passive custodian—assisted in perpetrating a fraud against Plaintiff by purportedly lending credibility to the alleged fraudsters' investments, by purportedly shirking custodial duties, and by purportedly knowing of the third-party fraud and not revealing it to Plaintiff. But to plead a fraud claim in California, Plaintiff must plead, with specificity and plausibility, five necessary elements: "a false misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Ness*, 317 F.3d at 1105 (quotation omitted). Plaintiff's allegations are insufficient because they lack specificity and plausibility with regard to at least four of these five elements, because they improperly try to lump Provident into purposefully vague group pleadings, and because Plaintiff fails to plead entire elements of her individual causes of action.[4]

### 1.   Plaintiff Fails to Allege a False Misrepresentation.

The closest Plaintiff comes to alleging any factual misrepresentation at all is that BAE purportedly misrepresented the condition of Plaintiff's Detroit investment properties and the rate of return on her investments. *See, e.g.*, Compl. ¶¶ 102, 142. But Plaintiff does not allege that Provident made any misrepresentations. In fact, Plaintiff admits that her first direct

---

[4] Plaintiff's failure to articulate specific and plausible claims is aggravated by the fact that the Complaint alleges a putative class action:

> Causes of Action based on fraud are highly individualistic and are therefore often particularly ill-suited to class resolution. The facts of each individual class member will generally vary, for example, as to the types of representations received, the manner in which the representations were made, the degree of class member reliance, and the additional information that the class member may have acquired with due diligence. Due to these numerous individualized issues, management of a fraud class action is generally a difficult proposition.

*Anderberg v. Masonite Corp.*, 176 F.R.D. 682, 685 (N.D. Ga. 1997).

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

17515942

1   communication with Provident did not occur until "early April of 2013"—six months after

2   Plaintiff had directed Provident to make her final investment with BAE, and a full year after BAE

3   purportedly made its alleged misrepresentations.  *See* Compl. ¶¶ 146-149.

4          Plaintiff tries to circumvent this failure with her three theories, namely the Credibility

5   Theory, Custodial Duty Theory, and Arbiter of Fraud Theory.  But all three of those theories fail

6   to salvage the complete lack of a misrepresentation by Provident.  First, the Credibility Theory

7   fails because it is not a misrepresentation for Provident to be a reputable company with a good

8   name and a professional website, or to provide custodial services to investors, like Plaintiff, who

9   seek out, apply, and qualify for those services.  Second, the Custodial Duty Theory fails because

10  it does not identify a single misrepresentation made by Provident to Plaintiff or to anyone else.

11  Even accepting Plaintiff's allegations that Provident failed to perform its duties as true (which

12  they are not), such failure would not constitute a fraudulent misrepresentation of material fact to

13  fail to perform the passive, clerical duties of a custodian.  Rather, it simply would be a breach of

14  contract.  Third, Plaintiff's Arbiter of Fraud Theory fails because it, too, does not identify a single

15  misrepresentation by Provident and instead relies exclusively on Provident purportedly failing to

16  identify others' misrepresentations to Plaintiff.  But this theory is entirely dependent on Provident

17  knowing of BAE's purported misrepresentations, and, as shown in the next section, the

18  Complaint is devoid of factual allegations showing that Provident knew anything about BAE's

19  purported misrepresentations at any time, let alone at a time relevant to Plaintiff's investments.

20                    2.      Plaintiff Fails to Allege Knowledge.

21         A purpose of Rule 9(b) is to "deter plaintiffs from the filing of complaints as a pretext for

22  the discovery of unknown wrongs" and "to prohibit plaintiffs from unilaterally imposing upon the

23  court, the parties and society enormous social and economic costs absent some factual basis."

24  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quotations omitted); *Entrust II*,

25  2013 WL 1320498 at *4 (same).  Unfortunately, plaintiff's counsel is undeterred.

26         Again, plaintiff's counsel has filed a baseless complaint against a passive custodian.

27  Again, Plaintiff's allegations rely entirely on the Arbiter of Fraud Theory.  Again, the plausibility

28  of Plaintiff's claims hinge on whether or not Provident knew of others' alleged fraud.  And again,

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

14

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  the Complaint does not contain a single factual allegation to show that Provident had any

2  knowledge whatsoever that, if revealed, could have prevented Plaintiff's purported harm.

3      Plaintiff's Complaint is missing the same factual allegations that led Judge Alsup to hold

4  that the plaintiffs' claims against Entrust "fall well short of the specificity required to plead that

5  defendants had knowledge of fraud." *Entrust III*, 2013 WL 2606407 at *3.  As in *Entrust*,

6  Plaintiff has launched countless conclusory allegations about what "Defendants knew," *see, e.g.*,

7  Compl. ¶¶ 79-82, and has thrown in an array of conclusory allegations about Provident's

8  "knowledge," *see, e.g.*, Compl. ¶ 152.  But these "purposefully vague allegation[s], the key to

9  plaintiff['s] claims, do[] not give rise to a plausible inference that each defendant knew that

10  [BAE] had [allegedly] stolen the investments . . . .  For all th[ese] allegation[s] reveal[], this

11  information came to light after the time frame of the investments or after plaintiffs knew about

12  the fraud themselves." *Entrust II*, 2013 WL 1320498 at *5.  Indeed, Plaintiff admits that she did

13  not alert Provident to her suspicions until "early April of 2013"—six months after Plaintiff had

14  directed Provident to make her final investment with BAE, and a full year after BAE purportedly

15  made its alleged misrepresentations.  *See* Compl. ¶¶ 146-149.

16      As in *Entrust II*, "Plaintiff[] must specify *when*" Provident obtained the purported

17  knowledge, "the extent of knowledge at times relevant to plaintiff[]," and "the basis for the

18  allegations."  2013 WL 1320498 at *5.  Plaintiff again has failed to plead any of these necessary

19  facts, and all of Plaintiff's claims against Provident should be dismissed.

20      Indeed, even if Provident had knowledge of fraud by BAE, it could not plausibly have

21  intended to defraud Plaintiff by failing to reveal BAE's fraud, if for no other reason than because

22  Provident did not enter the picture and could not have known of the alleged BAE fraud until

23  months after the investment was made.[5]

24          3.   Plaintiff Fails to Allege Justifiable Reliance.

25      Plaintiff devotes an entire section of her Complaint trying to show she "relied upon . . .

26  Defendants in many ways," but even if she did, Plaintiff did not plead—nor could she—facts to

27  show that her reliance was *justifiable*.

28

[5] For the same reason, Provident could not have caused any harm Plaintiff could have suffered.

15           Case No. C 13-02081-PSG

DEFENDANT PROVIDENT TRUST GROUP, LLC'S MOTION TO DISMISS

17515942

First, Plaintiff admits that she invested in a *self-directed* IRA.  *See* Compl. ¶ 5.  This fact alone shows that Plaintiff was not "justified" in relying upon the passive custodian of her account with whom she had never spoken.  There is nothing ambiguous about the investor's role and responsibilities in a "self-directed" account.  Indeed, the very nature of a self-directed IRA—the investment option chosen by Plaintiff—undermines Plaintiff's claims against Provident.  Self-directed IRAs are authorized by federal law and held by a trustee or, in this case, a custodian (i.e., Provident), that permits investment in a broader set of assets than is permitted by traditional IRA custodians.  In 2011, the Securities and Exchange Commission ("SEC") issued an "Investor Alert" warning investors that self-directed IRAs may be used to fleece investors, that the custodians (like Provident) have limited duties to the investors, and that the investors (like Plaintiff) are responsible for their own self-directed IRA investment decisions:

> … While self-directed IRAs can be a safe way to invest retirement funds, investors should be mindful of potential fraudulent schemes when considering a self-directed IRA.  Investors should understand that the <u>custodians and trustees of self-directed IRAs may have limited duties to investors</u>, and that the <u>custodians and trustees for these accounts will generally *not* evaluate the quality or legitimacy of an investment and its promoters</u>.  As with every investment, <u>investors should undertake their own evaluation</u> of the merits of a proposal, and should check with regulators about the background and history of an investment and its promoters before making a decision.

SECURITIES AND EXCHANGE COMMISSION INVESTOR ALERT: SELF-DIRECTED IRAS AND THE RISK OF FRAUD (2011) (hereafter, "Investor Alert").  As plaintiff's counsel has tried unsuccessfully many times before, the present civil action seeks to hold the custodian (i.e., Provident) liable for the frauds allegedly perpetrated by others, exactly what the SEC said ordinarily would not fly.

Second, the SEC's "Investor Alert" also undermines any claim that an investor could justifiably rely on a custodian in making self-directed investments.  The Investor Alert warns about the dangers of investing in self-directed IRAs, and notes that custodians "may have limited duties to investors, and that the custodians . . . will generally *not* evaluate the quality or legitimacy of an investment."  *See* Investor Alert (emphasis in original).  As Judge Alsup concluded, "[g]iven this statement from the SEC and the self-directed nature of the accounts, it is

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

16

1  not plausible that plaintiffs as a general matter would rely on defendants to seek out fraud or to

2  perform fair market valuations." *Entrust II*, 2013 WL 1320498 at *5. The same is true here.

3  Third, "[i]f plaintiff[] intend[s] to claim that [Provident] had a duty to seek out fraud or

4  reveal fraud, [plaintiff] must plead facts that show these duties existed at critical times. *Id.* As in

5  *Entrust II*, Plaintiff has completely failed to do so, nor could she. The law,[6] the SEC's Investor

6  Alert, and Plaintiff's agreements with Provident[7] all preclude any claim that Provident ever had

7  such a duty or that Plaintiff could have *justifiably* relied on it. Without justifiable reliance, all of

8  Plaintiff's claims against Provident fail.

9  ### 4.   Plaintiff Fails to Allege Damages.

10  At best, Plaintiff's allegations show that Plaintiff paid Provident its standard service fees

11  for the custodial services Plaintiff requested and that Provident rendered. *See* Compl. ¶ 122.

12  Even if Plaintiff's investments with BAE were fraudulent—and Provident has no basis to think or

13  believe they were—Plaintiff still has no legal basis for recovering the fees she paid to Provident,

14  because Plaintiff received the exact service for which she paid those fees (i.e., performance of her

15  directives). Moreover, the Complaint makes no factual allegations that Provident did anything

16  before Plaintiff's investments that caused Plaintiff any damage, or that Provident could have done

17  anything after Plaintiff made her investments that could have prevented or mitigated her

18  purported damages.

19  [6] *See, e.g.*, Compl. ¶ 30.a (quoting 26 C.F.R. 1.408-2).

20  [7] *See, e.g.*, Exhibit B § 8.03(b) ("We will make no determination as to whether any IRA investment is prohibited."); Exhibit B § 8.03(e) ("[W]e are strictly a passive Custodian and as such do not provide legal

21  or tax services or advice with respect to your IRA investments."); Exhibit B § 8.04(a) ("You have exclusive responsibility for and control over the invest of the assets of your IRA."); Exhibit B § 8.04(b)

22  ("We are acting solely as passive custodian . . . and have no discretion to direct any investment in your IRA. . . . It is not our responsibility to review the prudence, merits, viability or suitability of any

23  investment directed by you . . . or to determine whether the investment is acceptable under ERISA, the Code or any other applicable law. . . . We have no responsibility to question or otherwise evaluate any

24  investment directions given by you . . . . It is your responsibility to perform proper due diligence."); Exhibit B § 8.15 ("We neither provide a guarantee of value nor the appropriateness of the appraisal

25  techniques applied . . . and we assume no responsibility for the accuracy of the valuations presented with respect to assets whose value is not readily ascertainable one either an established exchange or a generally

26  recognized market."); Exhibit A, "DOI" ("My IRA account is self-directed and I, alone, am responsible for the selection, due diligence, management, review and retention of all investments in my account. I agree

27  that the Custodian and Administrator are not a 'fiduciary' for my account, as the term is defined in the Internal Revenue Code, ERISA or any other applicable federal, state or local laws. I hereby direct the

28  Custodian and Administrator, in a passive capacity, to enact this transaction for my account, in accordance with my adoption agreement.").

Indeed, the most plausible explanation for the facts that Plaintiff does allege is that Plaintiff suffered no damage at all, received the investment properties that she wanted (though with a possible glitch in titling the properties), and is merely complaining about a situation common to many investors (particularly for real estate in Detroit: a lower rate of return than anticipated. But Provident is not responsible for insuring Plaintiff's investments.

### 5. Plaintiff Improperly Grouped Defendants.

"In order to provide adequate notice of a fraud claim to defendants, '[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.'" *Entrust II*, 2013 WL 1320498 at *6 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007)); *see also Entrust III*, 2013 WL 2606407 at *5 ("Plaintiffs must inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (internal quotations omitted)).

Yet, as they did in *Entrust*, plaintiff's counsel has purposefully pleaded the Complaint against Provident by grouping the defendants together and making countless allegations about what "Defendants" did or did not do. *See, e.g.*, Compl. ¶¶ 79-82, 89-91, 93-94, 164-167, 175-178, 182-188, 198-210. This group pleading fails to inform Provident of the allegations surrounding its alleged participation in the alleged fraud. More importantly, it hides the fact that Plaintiff cannot allege specific, plausible facts to show that Provident was involved in any way in the alleged fraud. Just as it was in *Entrust*, Plaintiff's improper group pleading is dispositive.

This time, plaintiff's counsel tries to avoid the result in *Entrust*, and to justify the improper group pleading, by advancing conclusory allegations that all of the defendants were engaged in an "incestuous relationship" that "involved shared personnel, resources, and control." *See, e.g.*, Compl. ¶¶ 15-16. But the complaint does not allege a single fact to support this theory of shared personnel, resources or control, nor can plaintiff's counsel conjure a single factual allegation that in any way connects Provident to the alleged fraud of either BAE or Kabajouzian. Plaintiff tries to create innuendo by claiming (falsely) that Provident owns the intellectual property for My Self Direct (a defendant for which there is literally not a single allegation of wrongdoing in the Complaint), that BAE gave Plaintiff a Provident application to sign up for

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

18

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   Provident's services, and/or that Provident's reputation, name and/or website "gave credibility" to

2   BAE.  *See, e.g.*, Compl. ¶¶ 15, 56, 108.  These assertions, even if true, do not come close to the

3   specificity required to show that Provident was acting in concert, or as part of a fraudulent

4   scheme, with any of the other defendants.  Indeed, it falls far short of the pleadings that failed in

5   *Entrust*, where all four defendants were Entrust entities operating under the same corporate

6   umbrella:  "While the four defendants in the present suit exist as part of the same corporate

7   structure, plaintiffs may not therefore conclude that all four defendants acted collectively to

8   produce each alleged misrepresentation."  *Entrust III*, 2013 WL 2606407 at *5.  As in *Entrust*, the

9   Court should reject Plaintiff's blatant attempt to hide the lack of facts against Provident through

10   improper group pleading.

11   6.   <u>Plaintiff Fails to Plead Required Elements of Individual Claims.</u>

12   In addition to the above, Plaintiff's first claim for conversion fails because Plaintiff fails to

13   allege the required element that Provident had control of Plaintiff's property.  "Under California

14   law, conversion is the wrongful exercise of dominion over another's personal property in denial

15   of or inconsistent with [her] rights in the property."  *In re Emery*, 317 F.3d 1064, 1069 (9th Cir.

16   2003).  At best, Plaintiff alleges that Provident (grouped with all "Defendants") "aided and

17   abetted Ponzi Schemes and other fraudulent conduct that permitted KABAJOUZIAN to exercise

18   unauthorized dominion and control over the property."  *See* Compl. ¶ 164.[8]  But Plaintiff never

19   alleges that Provident ever exercised dominion and control over "the property," and the

20   Complaint is devoid of facts that suggest Provident did so.  As in *Entrust II*, Plaintiff[] ha[s]failed

21   to allege an essential element of this claim," and "[t]his is dispositive."  *Entrust II*, 2013 WL

22   1320498 at *7.

23   Plaintiff's claim for conversion also fails to specify the property in question.  To the

24   extent Plaintiff's conversion claim contemplates money as the subject "property," California

25   permits a conversion claim over money only when "there is a specific, identifiable sum

26   involved."  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil, & Shapiro, LLP*, 150

27   

28   [8] Confusingly, Plaintiff alleges elsewhere that no defendant ever owned or had control over "the property."  *See, e.g.*, Compl. ¶ 148.

17515942

1   Cal.App. 4th 384, 395, 58 Cal. Rptr. 3d 516 (2007).  Plaintiff's conversion claim discusses "the

2   property" and "their funds," but fails to specify what property was purportedly converted, let

3   alone the "specific, identifiable sum involved."  *See, e.g.*, *Entrust II*, 2013 WL 1320498 at *8.

4   Moreover, while Plaintiff's RICO claim fails for many of the same reasons identified

5   above (i.e., failing to allege facts that defendants acted as a single "enterprise" to "perpetuate a

6   fraudulent scheme"), the Court can easily dispatch with Plaintiff's RICO claim for failure to

7   allege any facts on one crucial element to any RICO claim.  As the Supreme Court has noted, a

8   RICO claim requires, "as one necessary element," a "pattern of racketeering activity."  *H.J. Inc.*

9   *v. Nw. Bell Telephone Co.*, 492 U.S. 229, 232 (1989).  What Plaintiff has alleged against

10  Provident clearly does not qualify as "racketeering activity," but the Court can dismiss Plaintiff's

11  RICO claim for a simpler reason:  Plaintiff has failed to allege a "pattern" of racketeering activity.

12  By definition, a "pattern" "requires at least two acts of racketeering activity."  *Id.* at 237 (quoting

13  18 U.S.C. § 1961(5)).  Here, Plaintiff has failed to plead even one example of racketeering

14  activity—her own—and has not even tried to allege a second example.  A single poorly-pleaded

15  example of alleged wrongdoing cannot a pattern make.

16  **IV.    CONCLUSION**

17  Plaintiff and her counsel have wasted too much of this Court's time and resources already,

18  as well as the time and resources of Provident and numerous other custodial defendants that were

19  forced to defeat these baseless, "cookie-cutter" claims.  For the reasons discussed above,

20  Provident respectfully requests that the Court end plaintiff's counsel's wasteful and futile crusade

21  and dismiss the Complaint against Provident, with prejudice, under Rules 12(b)(3) and 12(b)(6).

22  DATED this 8th day of July, 2013.

23                          **SNELL & WILMER L.L.P.**

24

25                          //s// Alina Mooradian
                            Matthew L. Lalli
26                          Jonathan R. Murphy
                            Alina Mooradian
27                          *Attorneys for Defendant*
                            *Provident Trust Group, LLC*
28

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 350 South Grand Avenue, Suite 2600, Los Angeles, California.

On _____*July 8*_____, 2013 I served, in the manner indicated below, the foregoing document described as:

**DEFENDANT PROVIDENT TRUST GROUP, LLC'S NOTICE OF MOTION, AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JASON HELQUIST; DECLARATION OF ALINA MOORADIAN; [PROPOSED] ORDER**

on the interested parties in this action by:

| PLAINTIFF COUNSEL | Cathy J. Lerman, Esquire (pro hac vice)<br>CATHY JACKSON LERMAN, PA<br>1440 Coral Ridge Drive<br>Coral Springs, Florida 33071<br>954.663.5818<br>954.341.3568, fax<br>clerman@lermanfirm.com |
|---|---|
| PLAINTIFF COUNSEL | David Keith Dorenfeld, Esquire<br>Michael W. Brown, Esquire<br>SNYDER & DORENFELD, LLP<br>5010 Chesebro Road<br>Agoura Hills, California 91301<br>818.865.4000<br>818.865.4010, fax<br>David@sd4law.com |
| PLAINTIFF COUNSEL | Lawrence T. Fisher, Esquire<br>BURSON & FISHER, P.A.<br>1990 North California Boulevard<br>Suite 940<br>Walnut Creek, California 94596<br>925.300.4455<br>925.407.2700, fax<br>ltfisher@bursor.com |
| PLAINTIFF COUNSEL | David Keith Dorenfeld, Esquire<br>Michael W. Brown, Esquire<br>SNYDER & DORENFELD, LLP<br>5010 Chesebro Road<br>Agoura Hills, California 91301<br>818.865.4000<br>818.865.4010, fax<br>David@sd4law.com<br>MWB@sd4law.com |

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

21

Case No. C 13-02081-PSG

17519594

1       BY E-FILING (USDC North): I caused such document to be sent electronically to the court; pursuant to General Order No. 45, electronic filing constitutes service upon the

2  parties.

3       FEDERAL:  I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.

4

EXECUTED on _____, 2013, at Los Angeles, California.

5

6

7                                   Cheryl Wynn

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

22                                   Case No. C 13-02081-PSG